CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
5/15/2025
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WAYNE THOMAS BURNLEY,<br><br>*Defendant.* | CASE NO. 6:17-cr-00013<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Wayne Thomas Burnley ("Petitioner") moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Dkt. 233. In support of his motion, Petitioner asserts three claims of ineffective assistance of counsel in violation of the Sixth Amendment. Because the evidence does not support two of his claims and is unclear as to the third, Petitioner's § 2255 Motion (Dkt. 233) is DENIED IN PART and the Government's Motion to Dismiss (Dkt. 237) is GRANTED IN PART. The Court will hold an evidentiary hearing on circumstances surrounding Petitioner's plea offer.

## I.     Legal Standard

Collateral attacks on a conviction or sentence require a petitioner to establish an error of constitutional or jurisdictional magnitude which could not have been raised on direct appeal. *Hill v. United States*, 368 U.S. 424, 428 (1962). However, ineffective assistance of counsel is subject to collateral attack. *Massaro v. United States*, 538 U.S. 500, 509 (2003). The petitioner bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965).

In deciding a § 2255 motion, the Court need not hold a hearing if "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §

1

2255. This is partially such a case.

## II. **Background**

On April 18, 2015, Nelson County, Virginia Sheriff's Deputy Sergio Sanchez and Officer Brian Sites stopped Petitioner for running a stop sign. Dkt. 206 ¶ 59. During the traffic stop, the deputies became suspicious that Petitioner's passenger was under the influence of drugs and called a K-9 unit to the scene. Petitioner drove his car away at a high rate of speed, and Deputy Sanchez pursued him in his police car. *Id.* The two cars eventually collided, but the chase continued until Petitioner crashed into an embankment. Petitioner refused to exit the car and had to be physically removed. Deputies searched the car and found $3,683 in cash and four cell phones. *Id.*

On April 5, 2016, a state court jury convicted Petitioner of felony eluding police and improper use of an inspection sticker. He was also charged with assault and battery on a law enforcement officer based on evidence that he ran over Officer Sites' foot as he sped away. The jury found him not guilty on that charge and on a charge of failure to stop at a stop sign. *Id.* ¶ 102. At sentencing on June 7, 2016, the state court judge sentenced Petitioner to six years' incarceration with one year suspended on the condition of post-release supervision for one year. *Id.*

On October 26, 2017, a federal grand jury for the Western District of Virginia returned an Indictment charging Petitioner and others with drug distribution offenses. Dkt. 3. Specifically, the grand jury charged that from January 2014 through December 2017, the Defendants knowingly and intentionally conspired to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841 (a)(1) and (b)(1)(A). *Id.*

On November 13, 2017, a detainer was lodged on this Indictment while Petitioner was serving the state court sentence for eluding police. Dkt. 206 ¶ 4. On November 8, 2018, a jury

found him guilty of the federal charges. *Id.;* Dkts. 120, 125. Petitioner was sentenced to 300 months' imprisonment but received credit for time served on the state court sentence, resulting in a sentence of 264 months. The sentence ran concurrently with the remainder of the state court sentence. Dkt. 167.

Petitioner appealed this sentence, challenging the application of a two-level enhancement for reckless flight under U.S.S.G. 3C1.2 and a three-level leadership enhancement under U.S.S.G. 3B1.1(b). *Id.* ¶ 5; Dkt. 168. On February 19, 2021, the Fourth Circuit Court of Appeals found no error in the application of the reckless flight enhancement but found procedural error as to the leadership enhancement. Petitioner's sentence was vacated and remanded for further proceedings. Dkt. 195. This Court resentenced Petitioner to 250 months' incarceration on October 7, 2021. Dkt. 214. This sentence accounted for the 36-month adjustment the Petitioner received in the original sentence for time served on the state court sentence. *Id.*

Petitioner filed a motion for compassionate release which this Court denied on April 6, 2022. Dkts. 217, 228. He filed the instant motion to vacate his conviction on November 14, 2022. Dkt. 233.

### III.   Discussion

To prove ineffective assistance of counsel, Petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington* and show that (1) counsel's performance was deficient and (2) he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In applying *Strickland*, courts need not address both prongs if the petitioner makes an insufficient showing on one. *Moore v. Hardee*, 723 F.3d 488, 500 (4th Cir. 2013).

Petitioner must show that counsel's representation fell below an objective standard of reasonableness, having made errors so serious that he was not functioning as the counsel that the

Sixth Amendment guarantees. *Strickland*, 466 U.S. at 687–88. *Strickland* established a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight and to evaluate the challenged conduct from counsel's perspective at the time. *Id.* "[S]trategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.

To establish prejudice, Petitioner must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. In the sentencing context, a prisoner may demonstrate prejudice by showing that he or she received additional prison time at sentencing due to counsel's error or omission. *Glover v. United States*, 531 U.S. 198, 203–04. The additional prison time need not be substantial: "[A]ny amount of actual jail time has Sixth Amendment significance," and thus a defendant can make out a claim of prejudice in the sentencing context by showing that his sentence was increased, whether substantially or not, as a result of defense counsel's error. *Id*. at 203-205.

Here, Petitioner raises three ineffective assistance of counsel claims. Petitioner received a sentencing enhancement for reckless endangerment while fleeing and states that the enhancement "was based on Deputy Sanchez's testimony that [he] ran over Officer Sites' foot while driving away from where [he] had been stopped." *Id*. Dkt. 233 at 4. Petitioner claims his counsel was ineffective because he did not cross-examine Deputy Sanchez about the incident and did not obtain video evidence that Petitioner "thought" existed. *Id.* He argues that he received a longer sentence due to counsel's failures. *Id.*

Second, Petitioner complains that his counsel waived opening statement, did not move for

4

acquittal under Rule 29, and made no objections during the course of the trial. *Id.* at 5. He contends that but for his attorney's poor performance, the outcome of the trial would have been different. *Id.*

Finally, Petitioner alleges that his attorney did not properly advise him regarding the time frame for agreement to a plea deal. *Id.* at 6-7. He states he signed a plea agreement but that it was rejected as untimely. *Id.*

As to the first two issues, an evidentiary hearing is not necessary because Petitioner has not presented a colorable Sixth Amendment claim showing disputed facts beyond the record or a dispute about credibility. *United States v. Mayhew*, 995 F.3d 171, 176–77 (4th Cir. 2021). To the contrary, Petitioner's motion and the files and records of the case conclusively show that counsel was not ineffective such that Petitioner is entitled to no relief. 28 U.S.C. § 2255(b). However, whether counsel failed to properly advise Petitioner regarding the plea deal is unclear.

### A. Counsel was not ineffective in his cross-examination of Deputy Sanchez and in deciding not to pursue video evidence.

Petitioner received an enhancement for reckless endangerment during flight due to evidence that he ran over Officer Sites' foot when fleeing. He claims that the enhancement was based on Deputy Sanchez's testimony and that his counsel did not cross examine Deputy Sanchez regarding the incident, but this claim is false. A review of the trial transcript reveals the following exchange:

> Counsel: Now, you mentioned that Officer Sites had had his foot run over. Did you see that?
>
> Deputy Sanchez: No. I was dealing with Mr. Faircloth. But Deputy Sites was jumping up and down with his foot in the air, saying he just had his foot ran over.
>
> Counsel: That case was tried and Mr. Burnley was found not guilty on that charge, right?

A    Correct.

Dkt. 186 (Jury Trial Testimony of November 6, 2018) at 16:5-12. Counsel's cross-examination elicited testimony that the witness did not actually see Petitioner run over Officer Sites' foot and that he was ultimately found not guilty of assault and battery of a police officer stemming from that charge—the exact points that needed to be made.[1] Petitioner cannot show that counsel's performance was deficient as not only did counsel cross-examine Officer Sanchez, but he elicited the testimony necessary to make the pertinent points.

Petitioner further complains that counsel did not track down video evidence of the incident and play it at trial. Counsel submitted an affidavit (Dkt. 237-1) stating that he reviewed all the available discovery material and found no reference to video footage of Petitioner's flight from law enforcement officers. Dkt. 237-1 ¶ 1. Even if video evidence existed, counsel could have reasonably made a strategic decision to exclude it, believing that footage of the Petitioner fleeing law enforcement might inflame the jury. Indeed, the Fourth Circuit characterized Petitioner's flight from police as "reckless," noting that he "drove at relatively high speeds while fleeing on winding rural roads, eventually pulling onto a logging road where the chase continued. At one point the vehicles collided, and Burnley ultimately became stuck in an embankment . . ." Dkt. 195 n.2. "Even if we accept that Burnley merely grazed the officer's foot, his reckless flight nonetheless dramatically increased the risk of far more serious harm." *Id.* at 12-13 (citations omitted).

Counsel's strategic decision regarding the cross-examination of Officer Sanchez was reasonable, and the Court does not find by a preponderance of the evidence that counsel was ineffective regarding video evidence of the police chase.

---

[1] Although Petitioner was not found guilty beyond a reasonable doubt of assault and battery on a police officer, the standard of proof to consider his conduct as relevant to sentencing is a preponderance of the evidence. Here, Petitioner's conduct was relevant. *See* USSC § 1B1.3.

### B. Counsel's waiver of opening statement and other trial decisions were not objectively unreasonable.

Petitioner argues that his counsel was ineffective because he waived opening statement, did not make a Rule 29 motion at the conclusion of the Government's evidence, and did not object to hearsay and other improper evidence. Dkt. 233 at 5. Although it may be unusual to waive an opening statement, such a decision is tactical in nature and not objectively unreasonable. *Huffington v. Nuth*, 140 F.3d 572, 583 (4th Cir. 1998) (citing *Nguyen v. Reynolds*, 131 F.3d 1340, 1350 (10th Cir. 1997)). Here, in his affidavit, counsel has provided a tactical reason for not making an opening statement:

> Having given considerable thought about whether to make projections about what evidence the jury might hear during the trial, I decided to err on the side of reticence. Knowing that Mr. Burnley was determined to testify, and anticipating a rather unpredictable and extemporaneous performance, I simply did not want to give the jury expectations that I wasn't sure would be met. So I made the purely tactical decision to refrain from making any statement, either at the outset of trial or at the opening of the defense's case.

Dkt. 237-1 ¶ 2. The evidence does not support Petitioner's claim that waiving opening statement was objectively unreasonable.

The same is true about counsel's strategic decision regarding a Rule 29 motion for acquittal. Under the performance prong of *Strickland*, "[c]ounsel's 'strategic choices made after thorough investigation . . . are virtually unchallengeable . . . .'" *Gray v. Branker*, 529 F.3d 220, 229 (4th Cir. 2008) (quoting *Strickland*, 466 U.S. at 690–91). Furthermore, the Fourth Circuit has stated that whether to file a motion for acquittal under Rule 29 falls within the realm of strategic choices that a court must hesitate to second guess. *See United States v. Daniel*, 3 F.3d 775, 779 (4th Cir. 1993); *United States v. Mayberry*, 341 F. App'x 859, 862 (4th Cir. 2009) (unpublished). The evidence does not support a finding that the decision not to file a Rule 29 motion was

objectively unreasonable.

Petitioner's claim that "there were numerous instances where hearsay and other improper evidence came in without objection" is unsupported by any facts or reference to the record. Regarding this allegation, counsel attests:

> As to Mr. Burnley's contention that no objections were made regarding the admission of hearsay or other improper evidence, I simply do no recall whether or not this is accurate. I certainly did not have a strategy of refraining from making any objections. But if otherwise inadmissible evidence was presented (and I don't recall any specific instance of this arising at trial) I made judgments on a case-by-case basis of whether to object to its admission. In every case there are a multitude of factors that determine whether or not specific objections should be made. And the simple fact that an objection can be made, standing alone, does not mean that it should be made. This understanding was my guide in evaluating the admission of testimony and other evidence during Mr. Burnley's trial.

Dkt. 237-1 ¶2. Given the legal standard applicable to strategic decisions made at trial as well as Petitioner's failure to reference any specific deficiencies in counsel's trial performance, the Court does not find counsel's performance objectively unreasonable.

### C. Petitioner is entitled to a hearing regarding the plea offer.

Defendants are entitled to effective counsel during plea negotiations. *Missouri v. Frye*, 566 U.S. 134, 144 (2012). Defense counsel must communicate formal offers from the prosecution, and where counsel allows a formal plea deal with a fixed expiration date to expire without advising the defendant or allowing him to consider it, he has not rendered the effective assistance the Constitution requires. *Id.* at 145.

Petitioner argues that his attorney did not properly advise him how much time he had to accept the plea offer and that he did not realize that the Lafler/Frye hearing, conducted on October 30, 2018, one week before trial, was the last opportunity for him to sign a plea agreement. Dkt.

233 at 6. He alleges that after the hearing, he decided he wanted to sign the deal but did not see his attorney until November 5th, on the eve of trial, at which time he signed the plea agreement. *Id.* The prosecutor rejected the plea agreement as untimely. *Id.*

Counsel avers that Petitioner's "contention that he was not properly advised regarding plea deadlines is not true." Dkt. 237-1 ¶ 3. According to counsel, he made "every possible effort to persuade" Petitioner to engage in meaningful plea discussions and "to accept the final plea offer made by the government." *Id.* Petitioner "never gave counsel any indication that he would enter into a plea agreement until the very eve of trial, literally well into the evening on the night before the beginning of the trial, at which time the government was no longer inclined to accept." *Id.*

Prior to trial of this matter, the Government moved for a "Lafler/Frye" hearing to "make formal inquiry on the record . . . into whether the defendant has received, and had the opportunity to consider, the various plea agreements that were offered by the government in this case, and whether the defendant knowingly and willfully chose not to accept any of these plea agreements." Dkt. 103 (citing *Lafler v. Cooper*, 132 U.S. 1378 (2012); *Frye*, 132 U.S. at 399)). "In light of these cases, the government believe[d] it to be only prudent for a formal inquiry to be made into whether all plea agreements were communicated to the defendant, and to confirm that he ha[d] decided to decline all such offers in favor of proceeding to trial." *Id.*

In *Lafler*, the Supreme Court held that, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168. In *Frye*, the Supreme Court held that, "[w]hen defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." *Frye*, 566 U.S. at 145. In *Frye*, the defendant's counsel did not communicate a plea offer before it expired, and the defendant later brought a claim

9

for ineffective assistance of counsel, arguing that he would have accepted the plea offer had he known about it. *See Frye*, 566 U.S. at 138-39.

This Court conducted a Lafler/ Frye hearing one week before trial to guard against the claim that Petitioner is making; however, the record of the hearing does not resolve whether the plea offer contained a firm deadline and, if so, whether such deadline was communicated to Petitioner. A review of the hearing transcript reveals the following exchange:

> GOV'T ATTY: Your Honor, at this point, a couple of motions. One is for a Lafler-Frye inquiry for Mr. Burnley to make sure he fully understands the plea agreements and such. . . . Certainly the purpose of Lafler and Frye is to make Mr. Burnley go on the record stating that he understands that he has been given certain plea offers and that he knowingly and willingly declines them, perhaps fully understanding the consequences of so doing. Maybe his counsel can speak to that.
>
> THE COURT: All right.
>
> DEF'S ATTY: Judge, I would just say that Mr. Burnley has been housed in Dillwyn Correctional Center in central Virginia. I've made several trips over there throughout the course of my representation and have spoken at length about a variety of different plea options, most recently two that are fairly similar in content, but we have spoken extensively about it probably to the annoyance of my client. I don't know if the Court wants me to go into what those offers have been –
>
> THE COURT: I need to establish what the last best offer is and have Mr. Burnley say that he understands it.
>
> DEF'S ATTY: Okay. Judge, I have before me the most recent plea agreement, which is essentially an 11(c)(1)(C) plea offer, of 240 months to 246 months with the stipulation that 60 months of that would run concurrent to a Nelson County sentence for felony elude that Mr.  Burnley is currently pulling there in Dillwyn. It would mean essentially an additional 180 months tagged on to the time that he's got in Nelson County. That is the most recent and final plea offer made by the government in this case. Those are the sort of material aspects of it. There's nothing else extraordinary about the plea.

10

THE COURT: Other than that, does the government have any – think that that is sufficient explanation of the offer?

GOV'T ATTY: I guess the only other question that comes up sometimes is whether Mr. Burnley understands what the consequences are if he loses at trial.

THE COURT: He's facing then --

GOV'T ATTY: In the government's estimation on his guidelines, it would be probably 360 to life, consecutive to the five years he's serving; so somewhere in the range of 35 years on the guidelines.

THE COURT: With the guidelines?

GOV'T ATTY: That's with the guidelines.

THE COURT: Of course, the mandatory minimum is, what? 20 years?

GOV'T ATTY: The mandatory minimum, Judge, is 240 or 20 years.

THE COURT: All right. Mr. Burnley, would you stand and be sworn, please?

THE DEFENDANT: Yes, sir.
(Defendant sworn.)

THE COURT: Mr. Burnley, you heard your attorney and Mr. Bassford speak of the offer the government had made. Did they say anything that's different from your understanding of what the offer is?

THE DEFENDANT: No, sir; I understand, sir.

THE COURT: And you feel you've been fully apprised of the consequences of not accepting the offer?

THE DEFENDANT: Yes, sir.

THE COURT: And you know what the offer, of course, is.

THE DEFENDANT: Yes, sir.

Tr. of Mot. Hr'g 2:9-5:13, October 30, 2018. Given this exchange, that trial counsel communicated

11

the plea offer to Petitioner prior to its expiration is clear. Petitioner, under oath, stated that he understood the offer and the consequence of rejecting it. However, this testimony does not rule out Petitioner's allegations regarding expiration of the plea deal and its communication to him. Since there is a conflict as to whether the plea offer contained an expiration date and whether any such deadline was communicated to Petitioner, the Court will conduct a hearing on this issue only.

### D. If counsel was ineffective, Petitioner was prejudiced.

The Government argues that Petitioner cannot demonstrate prejudice because his ultimate sentence after the Fourth Circuit reversed the leadership enhancement was only ten months longer than the plea he was offered and rejected. Dkt. 237 at 14. However, in the sentencing context, a prisoner may demonstrate prejudice by showing that he or she received *any* additional prison time at sentencing due to counsel's error or omission. *Glover*, 531 U.S. at 203–04. The additional prison time need not be substantial: "[A]ny amount of actual jail time has Sixth Amendment significance," and thus a defendant can make out a claim of prejudice in the sentencing context by showing that his sentence was increased, whether substantially or not, as a result of defense counsel's error. *Id*. at 203-205.

The plea agreement called for Petitioner to be sentenced within a range of between 240 and 246 months with 60 months to run concurrently with the state court sentence. Most likely, even if the Government accepted his eve of trial agreement the court would have sentenced him at the high end of the range (246 months) because the jury had been summoned and the Court and counsel were prepared for trial. A sentence of 246 months is four months longer than the plea deal he rejected. Of course the court could have, but most likely would not have, rejected the plea agreement at that late hour. In any event, the Government's argument regarding prejudice is unpersuasive.

### IV.    Conclusion

The motion and the files and the records of the case conclusively show counsel was not ineffective in his cross-examination of Deputy Sanchez, in deciding not to pursue video evidence, and in waiving opening statement and making other trial decisions. However, the motion and the files and the records of the case do not conclusively show that Petitioner is entitled to no relief regarding expiration of the plea offer. Accordingly, Petitioner's § 2255 Motion (Dkt. 233) is denied in part and the Government's Motion to Dismiss (Dkt. 237) is granted in part, and the Court will hold a hearing regarding details of the plea offer.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion to all counsel of record and to schedule a hearing.

Entered this  15th  day of May, 2025.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE